**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF<br>ILLINOIS by LISA MADIGAN,<br>ILLINOIS ATTORNEY GENERAL, | )<br>)<br>) | 14 C 2783 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Jorge L. Alonso |
| v. | ) | |
| | ) | |
| CMK INVESTMENTS, INC. d/b/a<br>ALL CREDIT LENDERS, an Illinois<br>corporation, | )<br>)<br>) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff sues defendant for its alleged violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). The case is before the Court on plaintiff's Federal Rule of Civil Procedure ("Rule") 12(f) motion to strike defendant's amended affirmative defenses 1-10 and 12-15. For the reasons set forth below, the Court grants in part and denies in part the motion.

<u>**Facts**</u>

In March 2011, defendant introduced a new credit product described as a "Revolving (open-end) Credit Plan" ("RCP"). (Compl. ¶ 35.) RCPs are generally in amounts between $100.00 and $2,000.00 and have disclosed interest rates of 18 or 24 percent. (*Id.* ¶¶ 39, 41-42.) The RCP agreements require consumers to pay an account protection fee, in addition to principal and disclosed interest. (*Id.* ¶ 40.) In RCP agreements with a disclosed interest rate of 18 percent, the account protection fee is at least $10.00 for every $50.00 of the consumer's outstanding balance.

(*Id.* ¶ 41.)  In RCP agreements with a disclosed interest rate of 24 percent, the account protection

fee is $11.00 or $15.00 for every $50.00 of the consumer's outstanding balance.  (*Id.* ¶ 42.)  Plaintiff

contends that this fee is, in reality, undisclosed interest, and that defendant's failure to disclose it as

such violates state and federal law.  (*Id.* ¶ 59.)


### Discussion

"Affirmative defenses will be stricken only when they are insufficient on the face of the

pleadings."  *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see*

Fed. R. Civ. P. 12(f).  Because "[a]ffirmative defenses are pleadings," they "are subject to all

pleading requirements of the Federal Rules of Civil Procedure."  *Id.*  Whether they are also subject

to the "plausibility" pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555-57 (2007) and *Iqbal v. Ashcroft*, 556 U.S. 662, 677-79 (2009) is a subject of some debate.

*Compare, e.g., Shield Techs. Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL

4120440, at *7-8 (N.D. Ill. Sept. 19, 2012) (applying *Twombly* and *Iqbal* to affirmative defenses),

*with Leon v. Jacobson Transp. Co., Inc.*, No. 10 C 4939, 2010 WL 4810600, at *1 (N.D. Ill. Nov.

19, 2010) (concluding that the rationale underlying *Twombly* and *Iqbal* does not apply to affirmative

defenses).  In the absence of guidance from the Seventh Circuit, and given that the standard set forth

in *Twombly* and *Iqbal* is among the "pleading requirements" referred to in *Heller*, the Court holds

that *Twombly* and *Iqbal* apply to affirmative defenses.  Accordingly, to survive a motion to strike,

the challenged affirmative defenses need not contain "detailed factual allegations," but must contain

"enough facts to state a [defense] that is plausible on its face."  *Twombly*, 550 U.S. at 570.

Defendant asserts res judicata as its first affirmative defense. Specifically, defendant alleges that plaintiff's claims were the subject of final administrative action by the Illinois Department of Financial and Professional Regulation ("IDFPR"), which precludes plaintiff from relitigating them here. Plaintiff contends that Judge Ellis rejected this defense when she denied defendant's motion to dismiss.

It is true that Judge Ellis denied defendant's motion to dismiss on the grounds of res judicata, but she did so because the record before her did not establish that the IDFPR proceedings ended in a final judgment. (*See* 12/9/14 Op. & Order at 8-10 & n.4.) However, the record on a motion to dismiss is limited to the pleadings and matters of which the court can take judicial notice. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). Thus it is possible, as defendant contends, that it "will be able to submit evidence" supporting its res judicata defense at summary judgment or trial. (*See* Am. Answer & Aff. Defenses at 51.) Accordingly, the motion to strike the first affirmative defense is denied.

Defendant's second affirmative defense is laches. "Where a governmental body is engaged in a matter involving the exercise of its governmental functions, the defense of laches is not favored and should only be invoked in extraordinary circumstances." *Schivarelli v. Chi. Transit Auth.*, 823 N.E.2d 158, 167 (Ill. App. Ct. 2005). Moreover, laches applies to a government entity only if the entity took an affirmative act that induced defendant's substantial reliance. *Id.* Defendant alleges that the affirmative act here was IDFPR issuing a license to defendant after terminating the 2013 administrative proceedings concerning defendant's RCP product. Underlying this argument is the assumption, made without discussion or citation to authority, that IDFPR and plaintiff are interchangeable for purposes of laches. Illinois case law suggests otherwise. *See People ex rel.*

*Brown v. Ill. State Troopers Lodge No. 41*, 286 N.E.2d 524, 528-29 (Ill. App. Ct. 1972) (holding that Attorney General's registration of defendant under the Solicitation Act did not bar Director of State Department of Law Enforcement from suing defendant to enjoin its unlawful solicitation activities); *cf. Rhoads v. Bd. of Trs. of the City of Calumet City Policemen's Pension Fund*, 689 N.E.2d 266, 270 (Ill. App. Ct. 1997) (holding that Calumet City and the Calumet City Pension Board were not in privity for collateral estoppel "merely because they are both public entities"); *Hannigan v. Hoffmeister*, 608 N.E.2d 396, 404 (Ill. App. Ct. 1992) (holding that the University of Illinois and the State Universities Retirement System of Illinois were not in privity for res judicata). Because defendant does not offer, and the Court has not found, any authority for the notion that IDFPR's actions can be imputed to plaintiff for laches purposes, the Court grants the motion to strike the second affirmative defense.

Defendant's third affirmative defense is that its compliance with the federal Truth In Lending Act ("TILA") and its implementing regulation bars plaintiff's claims. Once again, plaintiff contends that Judge Ellis has already rejected this defense. This time, the Court agrees. Judge Ellis expressly stated that: (1) "[c]ompliance with TILA's disclosure requirements does not absolve All Credit Lenders from liability under ICFA or the Dodd-Frank Act if its account protection fee is otherwise unfair, deceptive, or abusive," which is precisely what plaintiff alleges; and (2) "TILA's distinction between interest and debt suspension coverage [does not] control[] [whether] . . . the account protection fee can[] be classified as interest" for purposes of state law. (*See* 12/9/14 Mem. Op. & Order at 15-16.) The third affirmative defense is, therefore, stricken.

Affirmative defenses 4-10 are payment, release, accord and satisfaction, election of remedies, setoff, mitigation of damages, and lack of injury, respectively. In each, defendant alleges that "[a]s

the Illinois Attorney General, Plaintiff need not prove individual damages to individual borrowers to bring an action under the Consumer Fraud Act," but cannot obtain rescission and restitution for individual borrowers if the borrowers have been paid for, released, or otherwise resolved their claims with defendant, failed to mitigate their damages, or did not suffer damages.  (*See* Am. Aff. Defenses 4-10.)  The Court disagrees.  First, as defendant admits, proof of damages is not an element of an ICFA claim brought by plaintiff.  *See* 815 Ill. Comp. Stat. 505/7 (stating that the Attorney General can bring an ICFA claim whenever she "has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by th[e] Act to be unlawful").  Thus, these damages-based defenses are inapt.  Second, any monetary recovery by plaintiff is more in the nature of disgorgement than damages:

> Even though the transactions underlying this action arose between individual consumers and defendant, the action stems from the Attorney General's duty to enforce the Consumer Fraud Act.  An action filed by the Attorney General under the Act is essentially a law enforcement action designed to protect the public, not to benefit private parties.  The statute expressly authorizes the Attorney General to enjoin illegal practices and to collect actual damages.  Both remedies serve to prevent continued violations of the Act, and may promote enforcement of the law.  Although restitution may benefit aggrieved consumers, the remedy flows from the basic policy that those who engage in proscribed conduct or practices surrender all profits flowing therefrom.

*People ex rel. Hartigan v. Lann*, 587 N.E.2d 521, 524 (Ill. App. Ct. 1992) (citation omitted).  Accordingly, the Court strikes affirmative defenses 4-10.

In affirmative defenses 12-14, defendant alleges that Dodd-Frank is unconstitutional because it is vague, violates separation-of-powers principles, and vests excessive power in a single official.  These allegations have been thoroughly analyzed and rejected by two other district courts.  *See Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, No. 1:14-CV-00292-SEB, __ F. Supp. 3d __, 2015 WL 1013508 (S.D. Ind. Mar. 6, 2015); *Illinois v. Alta Coll., Inc.*, No. 14 C 3786, 2014 WL

4377579 (N.D. Ill. Sept. 4, 2014). The Court agrees with the reasoning of these decisions, and thus strikes defenses 12-14 as insufficient as a matter of law.

In affirmative defense 15, defendant alleges that the civil penalties and forfeitures sought by plaintiff violate the Eighth Amendment. Plaintiff argues that "rais[ing] the propriety of the proportionality of an award not yet made by the Court as an affirmative defense here is speculative, unfounded, and does not defeat Plaintiff's claims." (Pl.'s Mot. Strike Am. Aff. Defenses at 9.) However, all defenses to damages are in some sense "speculative" and "unfounded" until an award is made, and none fully defeats a claim. *Cf. Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003) ("A cap on damages is only a partial defense, but that is true of any defense that is limited to the amount of damages, and in that respect it is no different from comparative negligence, which clearly is an affirmative defense."). Thus, plaintiff's argument is not a basis for striking defense 15.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part plaintiff's motion to strike defendant's amended affirmative defenses [55]. The motion is granted as to affirmative defenses 2-10 and 12-14, which are stricken, and denied as to affirmative defenses 1 and 15. Affirmative defense 11, which was not a subject of this motion, also stands.

SO ORDERED.                                             ENTERED:      June 30, 2015

_____
**HON. JORGE ALONSO**
**United States District Judge**